UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| DEJA REALTY CORP., | |
| Plaintiff, | Case No. 1:24-cv-00278 (JLR) |
| -against- | **OPINION AND ORDER** |
| THE TRAVELERS INDEMNITY COMPANY OF AMERICA, | |
| Defendant. | |

JENNIFER L. ROCHON, United States District Judge:

Deja Realty Corp. ("Plaintiff" or "Deja Realty") brings this action against its insurer, The Travelers Indemnity Company of America ("Defendant" or "Travelers"). Dkt. 11 ("Am. Compl. or the "Amended Complaint"). Before the Court is Travelers's motion under Federal Rule of Civil Procedure ("Rule") 56 for summary judgment, dismissal of all claims against it, and a declaration that Travelers has no obligation to Deja Realty to provide insurance coverage for any damages to Deja Realty's premises. *See* Dkt. 62. Travelers also seeks to strike the expert report of Plaintiff's expert engineer pursuant to Rules 26(a)(2)(B), 37(b)(2)(B), and 37(c)(1). Dkt. 50. For the following reasons, Defendant's motion for summary judgment is GRANTED, and Defendant's motion to strike Plaintiff's expert report is DENIED AS MOOT.

**BACKGROUND**

Except where noted, the following facts are undisputed and drawn from the parties' joint and individual Rule 56.1 statements and responses, the declarations submitted, and the exhibits attached thereto. Specifically, the parties provided a Local Civil Rule 56.1 Joint Statement of undisputed facts on November 20, 2025. Dkt. 70 ("Jt. SUF"). Travelers filed a Local Civil Rule 56.1 Statement in Support of its Motion for Summary Judgment on October 21, 2025, Dkt. 66

("Def. SUF"), to which Deja Realty filed a Local Civil Rule 56.1 Counter Statement in Opposition of Travelers's Motion for Summary Judgment on November 20, 2025, Dkt. 71 ("Pl. RSUF"). On December 4, 2025, Travelers filed a Response to Plaintiff's Additional Facts that were set forth at the end of Deja Realty's counterstatement, Dkt. 73 ("Def. RSUF"). In support of its motion for summary judgment, Travelers submitted declarations and attached exhibits by Mark Maisonneuve, Dkt. 64 ("Maisonneuve Decl."), Andrea Shear, Dkt. 65 ("Shear Decl"), and Yale Glazer, Dkt. 67 ("Glazer Decl."). In opposing the motion, Deja Realty submitted a declaration of Edmond Pryor, with exhibits that included additional declarations by Milkjor Shllaku, Eduart Shllaku, and Neil Wexler. Dkt. 69 ("Pryor Decl."); Dkt. 69-1 ("Milkjor Decl."); Dkt. 69-2 ("Eduart Decl."); Dkt. 69-3 ("Wexler Decl.").[1]

## I.    Factual Background

Deja Realty owns the land and apartment building located at 2015 Vyse Avenue, Bronx, New York (the "Premises"). Eduart Decl. ¶ 1. The present dispute centers around Deja Realty's request for insurance coverage from Travelers for damages Deja Realty sustained due to construction activities on a neighboring property, 2011 Vyse Avenue. *See generally* Am. Compl.

### A.  The Travelers Policy

Travelers issued a commercial insurance policy to Deja Realty, effective May 8, 2021 to May 8, 2022 (the "Policy"). Jt. SOF ¶ 1; Dkt. 67-1 ("Policy"). The Policy provides certain coverage for the Premises, subject to the Policy's provisions, conditions, limitations, exclusions, and endorsements. Jt. SOF ¶ 3. Specifically, the Businessowners Property Coverage Special Form provides in relevant part the following:

---

[1] Given that two of the declarants share the same last name of Shllaku, the Court will refer to each by their first names.

### A.  COVERAGE

We will pay for direct physical loss of or damage to Covered Property at the premises described in the Declarations caused by or resulting from a Covered Cause of Loss.

*Id.* ¶ 4; Policy at Trav 75.[2]  "Covered Causes of Loss" are described as:

### 4. Covered Causes of Loss

RISKS OF DIRECT PHYSICAL LOSS unless the loss is:
a. Limited in Paragraph A.5., Limitations; or
b. Excluded in Paragraph B., Exclusions.

Jt. SOF ¶ 4; Policy at Trav 77-78.  The Policy then references various Exclusions, including an

Earth Movement exclusion:

### B.  EXCLUSIONS

1. We will not pay for loss or damage caused directly or indirectly by any of the following.  Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss.  These exclusions apply whether or not the loss event results in widespread damage or affects a substantial area. . . .

### b. Earth Movement

(1) Earthquake, including any earth sinking, rising or shifting related to such event;

(2) Landslide, including any earth sinking, rising or shifting related to such event;

(3) Mine subsidence, meaning subsidence of a man-made mine, whether or not mining activity has ceased; or

(4) Earth sinking (other than sinkhole collapse), rising or shifting including soil conditions which cause settling, cracking or other disarrangement of foundations or other parts of realty.  Soil conditions include contraction, expansion, freezing, thawing, erosion, improperly compacted soil and the action of water under the ground surface;

---

[2] Given that there are several documents contained in the Policy with separate paginations, the Court will adopt the parties' practice of referring to the bates-number prefix "Trav" to identify the particular pages in the Policy.

all whether naturally occurring or due to man made or other artificial causes.

But if Earth Movement, as described in Paragraphs (1) through (4) above results in fire or explosion, we will pay for the loss or damage caused by that fire or explosion.

Jt. SOF ¶ 4; Policy at Trav 96.  The Exclusions section of the Policy further states:

2. We will not pay for loss or damage caused by or resulting from any of the

following . . . [:]

d. (1) Wear and tear;

(2) Rust, corrosion, fungus, decay, deterioration, wet or dry rot, mold, hidden or latent defect or any quality in property that causes it to damage or destroy itself;

(3) Smog;

(4) Settling, cracking, shrinking or expansion;

(5) Nesting or infestation, or discharge or release of waste products or secretions, by insects, birds, rodents or other animals . . . .

Jt. SOF ¶ 4; Policy at Trav 98.

The Policy also provides the following relevant conditions:

**E. PROPERTY LOSS CONDITIONS**

The following conditions apply in addition to the Common Policy Conditions:

***

3. Duties in the Event of Loss or Damage

a.     You must see that the following are done in the event of loss or damage to Covered Property:

***

(2) Give us prompt notice of the loss or damage.  Include a description of the property involved.

(3) As soon as possible, give us a description of how, when and where the loss or damage occurred.

4

Jt. SOF ¶ 5; Policy at Trav 101-02.

### B. Damage to the Premises in 2021

Milkjor Shllaku, an owner of Deja Realty, testified in this action that he first found out about the damage to the Premises in or about September 21, 2021, when a tenant called the office of the building on the Premises and informed them that the building's front door would not open. Jt. SOF ¶ 9. Milkjor testified that when he received the complaint, rock was being broken at 2011 Vyse Avenue during construction. *Id.* ¶ 10. He therefore claimed that the front door was damaged due to the breaking of rock during that neighboring construction activity. *Id.* The construction crew of the neighboring building at 2011 Vyse Avenue used a hammering machine to break down the rock to set its foundation. *Id.* at ¶ 11. Milkjor testified that Deja Realty's building at the Premises was also built on solid rock after the rock was leveled and the foundation of the building was put in. *Id.*.

On December 10, 2021, Deja Realty sued its neighbors, 2011 Vyse Realty LLC ("Vyse") and Kiri Construction Corp. ("Kiri"), for damage to the Premises in New York Supreme Court, Bronx County, in the case captioned *Deja Realty Corp. v. 2011 Vyse Realty LLC and Kiri Construction Corp.*, Index No. 816819/2021E. *Id.* ¶ 15; *see* Glazer Decl., Ex. C. at Ex. 1 ("Vyse Compl."). In that action, Deja Realty alleged that Vyse and Kiri were excavating at 2011 Vyse Avenue, which abuts and is immediately adjacent to the Premises. Jt. SOF ¶ 16; Vyse Compl. ¶¶ 7-9. It further alleged that Vyse and Kiri's excavation of their property, which included the demolition of the rock below grade, caused the Premises to sustain severe damage to the façade and adjacent structural wall of the building on the Premises. Vyse Compl. ¶ 10. According to Deja Realty, by November 24, 2021, the Premises had already sustained damages exceeding $450,000, and counting. *Id.*

C.  **Notice to Travelers**

On September 28, 2022, a little less than a year after it filed suit in State Court against its neighbor, Deja Realty first notified Travelers of alleged damages to the Premises from the neighboring construction, which had allegedly begun in or around June 2021.  Jt. SOF ¶ 6. Agnesa, Deja Realty's secretary, provided the notice by telephone.  *Id.* ¶ 7.  Travelers drafted the following notice description from the call:

> CONTRACTORS WERE CONSTRUCTING A NEW BUILDING AND IN THE PROCESS OF BREAKING ROCKS AND CONSTRUCTING THE VIBRATIONS CAUSED THE INSUREDS PROPERTY TO CRACK.
>
> \*\*\*
>
> LOSS DATE IS APPROXIMATE: 06/30/2021 THE NEIGHBOR HAD CONSTRUCTION BEING DONE FROM JUNE 2021- SEPTEMBER 2021 FOR A NEW PROPERTY BEING BUILT ADJACENT TO THE INSUREDS PROPERTY AND CAUSED DAMAGED BUT CALLER STATED THE DAMAGES OCCURRED DURING THE END OF JUNE 2021.  THE CONSTRUCTION HAS STARTED AGAIN IN SEPTEMBER 2022.

*Id.* ¶ 8; Dkt. 67-4 ("Notice").

Travelers inspected the Premises the next day, on September 29, 2022, with Deja Realty's superintendent.  Jt. SOF ¶ 13.  It thereafter denied coverage for the Claimed Loss.  *Id.* ¶ 14; Dkt. 67-9 ("Denial Notice").  The Denial Notice, dated September 30, 2022, stated that Travelers had determined that the Policy did not cover Deja Realty's loss.  Denial Notice at 2.  It further stated that Travelers's "research found that the damage is as a result of earth movement." *Id.*  The Denial Notice went on to say that "[s]ince earth movement is not a covered cause of loss, your policy does not provide coverage."  *Id.*  The Denial Notice then stated that: "As a reference, I have provided the following section of your policy, (Masterpac MP T1 02 02 05), which explains that this type of loss is excluded."  *Id.*  The Denial Notice thereafter excerpted

6

portions of the Businessowners Property Coverage Special Form in the Policy, including two

portions of the EXCLUSIONS section:

**BUSINESSOWNERS PROPERTY COVERAGE
SPECIAL FORM**

**B. EXCLUSIONS**

1. We will not pay for loss or damage caused directly or indirectly by any of the following.  Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss.  These exclusions apply whether or not the loss event results in widespread damage or affects a substantial area.

**b. Earth Movement**

(1) Earthquake, including any earth sinking, rising or shifting related to such event;

(2) Landslide, including any earth sinking, rising or shifting related to such event;

(3) Mine subsidence, meaning subsidence of a manmade mine, whether or not mining activity has ceased; or

(4) Earth sinking (other than sinkhole collapse), rising or shifting including soil conditions which cause settling, cracking or other disarrangement of foundations or other parts of realty.  Soil conditions include contraction, expansion, freezing, thawing, erosion, improperly compacted soil and the action of water under the ground surface; all whether naturally occurring or due to man made or other artificial causes.

But if Earth Movement, as described in Paragraphs (1) through ( 4) above results in fire or explosion, we will pay for the loss or damage caused by that fire or explosion.

(5) Volcanic eruption, explosion or effusion.  But if volcanic eruption, explosion or effusion results in fire or volcanic action, we will pay for the loss or damage caused by that fire or volcanic action.

Volcanic action means direct loss or damage resulting from the eruption of a volcano, when the loss or damage is caused by:

(a) Airborne volcanic blast or airborne shock waves;

(b) Ash, dust, or particulate matter; or

(c) Lava flow.

All volcanic eruptions that occur within any 168-hour period will constitute a single occurrence.

Volcanic action does not include the cost to remove ash, dust or particulate matter that does not cause direct physical loss of or damage to Covered Property[.]

*Id.* at 2-3.  Directly following the excerpts from the earth movement exclusion section, the

Denial Notice included excerpts from another EXCLUSION section:

2. We will not pay for loss or damage caused by or resulting from any of the following:

a. Artificially generated electrical current, including electric arcing that disturbs electrical devices, appliances or wires unless caused by a "specified cause of loss". But if artificially generated electrical current results in fire, we will pay for the loss or damage caused by that fire.

b. Delay, loss of use or loss of market.

c. Smoke, vapor or gas from agricultural smudging or industrial operations.

d. (1) Wear and tear;

(2) Rust, corrosion, fungus, decay, deterioration, wet or dry rot, mold, hidden or latent defect or any quality in property that causes it to damage or destroy itself;

(3) Smog;

(4) Settling, cracking, shrinking or expansion;

(5) Nesting or infestation, or discharge or release of waste products or secretions, by insects, birds, rodents or other animals;

*Id.* at 3.  Following these two excerpts from the EXCLUSIONS section of the Policy, Travelers

placed three asterisks in the Denial Notice and then excerpted another section of the Policy

covering PROPERTY LOSS CONDITIONS:

8

### E. PROPERTY LOSS CONDITIONS

The following conditions apply in addition to the Common Policy Conditions:

**3. Duties in the Event of Loss or Damage**

a. You must see that the following are done in the event of loss or damage to Covered Property:

(2) Give us prompt notice of the loss or damage.  Include a description of the property involved.

(3) As soon as possible, give us a de-scription (*sic*) of how, when and where the loss or damage occurred.

(4) Take all reasonable steps to protect the Covered Property from further damage, and keep a record of your expenses necessary to protect the Covered Property, for consideration in the settlement of the claim. This will not increase the Limit of lnsur-ance (*sic*).  However, we will not pay for any subsequent loss or damage re-sulting (*sic*) from a cause of loss that is not a Covered Cause of Loss.  Also, if feasible, set the damaged property aside and in the best possible order for examination.

*Id.* at 3-4.  The Denial Notice also contained a disclaimer/reservation of rights statement: "Your policy may have other terms, conditions and exclusions that apply to this claim.  We do not waive any rights, including our right to deny coverage, for any other valid reason under the policy or at law."  *Id.* at 4.  Finally, the notice concluded by stating that the policy contained a "suit limitation period of two years from the date of the loss in which to file suit regarding this claim."  *Id.*

## II.    Procedural History

Deja Realty commenced the present action in New York Supreme Court, Bronx County, on December 6, 2023, complaining that the vibrations from the construction on the neighboring property at 2011 Vyse Avenue caused damage to the Premises.  Jt. SOF ¶¶ 17-18.  Travelers removed the case to this Court on January 12, 2024.  *Id.* ¶ 19; *see* Dkt. 1.  Deja Realty filed an Amended Complaint on February 1, 2024.  Dkt. 11.  On February 19, 2024, Travelers moved to

dismiss the Amended Complaint in part. Dkt. 13. The Court granted the motion to dismiss the second cause of action, but denied the remainder of the motion to dismiss, on August 29, 2024. Dkt. 29. The action thereafter proceeded through fact and expert discovery.

### III.    Present Motions

Presently before the Court are two motions. Travelers moved on October 30, 2025, for summary judgment on Deja Realty's request for a declaration that Travelers is bound to compensate Deja Realty for damages to its real property up to the limits of the Policy. Dkt. 62 ("Mot."); Dkt. 63 ("Br."). Deja Realty opposed the motion on November 20, 2025, Dkt. 68 ("Opp."), and Travelers filed its reply brief on December 4, 2025, Dkt. 72 ("Reply").

Travelers also filed a motion to strike the report and related testimony of Neil Wexler, Plaintiff's expert engineer, on August 28, 2025, because the report (1) failed to include a statement of the compensation to be paid for the study and testimony in this case, (2) failed to list other cases in which the expert witness testified in the past four years, (3) was unsigned, and (4) was prepared by Wexler's associate Kyle McCormack without sufficient involvement by Wexler in the inspection and analysis. Dkt. 52. Deja Realty opposed the motion to strike on September 11, 2025, responding that Wexler had cured any deficiencies by disclosing, through declaration, his compensation and testifying history for the past four years, and by providing a signed copy of the report. Dkt. 56 at 5-6. Deja Realty also argued that Wexler properly supervised and adopted the report. *Id.* at 6-8. On September 18, 2025, Travelers filed its reply. Dkt. 59.

The Court first addresses, and grants, Travelers's motion for summary judgment, which renders moot the motion to strike Wexler's report.

## LEGAL STANDARD

Under Rule 56, a moving party is entitled to summary judgment if, on any claim or defense, the party "shows that there is no genuine dispute as to any material fact and the movant

is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A fact is 'material' only if it 'might affect the outcome of the suit under the governing law[,]' [and] [a] dispute is 'genuine' if 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Rosen v. UBS Fin. Servs. Inc.*, No. 22-cv-03880 (JLR), 2023 WL 6386919, at *4 (S.D.N.Y. Sept. 29, 2023) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). "The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact." *JTRE Manhattan Ave. LLC v. Cap. One, N.A.*, No. 21-cv-05714 (JLR), 2024 WL 3227010, at *8 (S.D.N.Y. June 27, 2024).

"In ruling on a motion for summary judgment, the court must view all evidence in the light most favorable to the non-moving party, and resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought." *Id.* (internal quotation marks omitted) (citation omitted). To defeat a motion for summary judgment, the nonmoving party must advance more than "a scintilla of evidence," *Liberty Lobby*, 477 U.S. at 252, and demonstrate more than "some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

With respect to the merits of the issues presented, the Court will apply New York law in interpreting the insurance policy. Both parties rely on New York case law in their briefs. *See Arch Ins. Co. v. Precision Stone, Inc.*, 584 F.3d 33, 39 (2d Cir. 2009) (applying New York law where the parties' briefs assumed that New York law governed the issues); *Margrabe v. Sexter & Warmflash, P.C.*, No. 07-cv-02798, 2009 WL 361830, at *5 n.5 (S.D.N.Y. Feb. 11, 2009) (applying New York law because "[t]he [p]arties appear[ed] to agree that [it] govern[ed] [the] dispute"), *aff'd*, 353 F. App'x 547 (2d Cir. 2009). In addition, the Court is exercising diversity jurisdiction over a dispute concerning an insurance policy that covers New York property and

11

was entered into by a New York insured.  *See 82-11 Queens Blvd. Realty, Corp. v. Sunoco, Inc. (R & M)*, 951 F. Supp. 2d 376, 381 (E.D.N.Y. 2013) ("[A] contract executed in New York and litigated in a district court sitting in New York while exercising diversity jurisdiction must be interpreted pursuant to New York law.").

## DISCUSSION

Travelers asserts that it is entitled to summary judgment on Deja Realty's claims for three reasons.  First, it claims that coverage is precluded as a matter of law because Deja Realty first notified Travelers of its loss a year after Deja Realty became aware of it and therefore failed to comply with the Policy's condition precedent of timely notice to Travelers of any loss.  Br. at 1. Second, Travelers argues that if its motion to strike Plaintiff's expert Neil Wexler's report and preclude his testimony is granted, Plaintiff will be unable to meet its burden to show that it incurred a covered loss to the Premises.  *Id.*  Third, and finally, Travelers argues that Deja Realty's claimed damages caused by vibrations from the neighboring property's construction are precluded in any event pursuant to the Policy's earth movement exclusion.  *Id*.  Because the Court finds Travelers's first argument persuasive, it need not reach the remainder.

Travelers argues that Deja Realty is not entitled to coverage under the Policy because it did not meet the condition precedent of timely notice of the loss.  *Id.* at 9-10.  Deja Realty became aware of some of the loss by at least September 2021, when the front door of the building on the Premises would not open because of vibrations that it had experienced from the construction next door.  Jt. SOF ¶ 9.  The Amended Complaint confirms that the damage was first observed in September 2021, Am. Compl. ¶ 9, and, indeed, the date of loss that is reflected in the notice provided to Travelers is even earlier, in June 2021.  Dkt 67-4.  Travelers argues that Deja Realty's notice of the loss to Travelers at least a year later, in September 2022, is untimely given that the Policy provides that in the event of a loss, Deja Realty is required to give Travelers

12

"prompt notice of the loss or damage," and provide "a description of how, when and where the loss or damage occurred" "[a]s soon as possible[.]" Jt. SOF ¶ 5; Policy at Trav 101-02. Deja Realty does not dispute that it learned of loss or damage by at least September 2021 and did not provide notice until September 2022. Jt. SOF ¶ 6.

"Under New York law, compliance with a notice-of-occurrence provision in an insurance policy is a condition precedent to an insurer's liability under the policy." *AMVS, Inc. v. Mt. Hawley Ins. Co.*, No. 22-cv-10782 (ER), 2025 WL 278438, at *4 (S.D.N.Y. Jan. 23, 2025) (quoting *Hedvat v. Chubb Nat'l Ins. Co.*, No. 24-1194, 2024 WL 4615824, at *1 (2d Cir. Oct. 30, 2024)); *see Power Auth. v. Westinghouse Elec. Corp.*, 502 N.Y.S.2d 420, 421 (N.Y. App. Div. 1986) ("An insurer's obligation to cover its insured's loss is not triggered unless the insured gives timely notice of loss in accordance with the terms of the insurance contract."); *HKB Hosp. LLC v. Mt. Hawley Ins. Co.*, No. 23-cv-00372 (JPO), 2024 WL 4349508, at *3 (S.D.N.Y. Sept. 30, 2024) ("Under New York law, 'compliance with a notice-of-occurrence provision in an insurance policy is a condition precedent to an insurer's liability under the policy.'" (quoting *Sparacino v. Pawtucket Mut. Ins. Co.*, 50 F.3d 141, 142 (2d Cir. 1995))); *Sunrise One LLC v. Harleysville Ins. Co.*, 293 F. Supp. 3d 317, 332 (E.D.N.Y. 2018) ("[T]imely notice is a condition precedent to insurance coverage and the failure to provide such notice relieves the insurer of its coverage obligation." (quoting *Minasian v. IDS Prop. Cas. Ins. Co.*, 676 F. App'x 29, 31 (2d Cir. 2017) (summary order)). Deja Realty does not dispute that the Policy required timely notice as a condition precedent to coverage.

"When an insurance policy requires that notice of an occurrence or claim be given promptly, like the one at issue here requiring notice 'as soon as possible,' notice must be given within a reasonable time in view of all of the facts and circumstances." *HKB Hosp.*, 2024 WL

13

4349508, at *3 (quoting *Cambridge Realty Co., LLC v. St. Paul Fire & Marine Ins. Co.*, 421 F.

App'x 52, 56 (2d Cir. 2011) (summary order)).  Under New York law, inexcusable delays of

much shorter periods than the year at issue here have been held to be unreasonable as a matter of

law and, thus, to discharge an insurer's obligation to provide coverage.  *See, e.g.*, *id.*, at *5

(finding six-month delay relieved insurer of coverage obligations); *Power Auth.*, 502 N.Y.S.2d at

422, 424 (noting that "[r]elatively short periods of unexcused delay have been found to be

unreasonable as a matter of law," and precluding coverage where notice was provided fifty-three

days after the loss); *Indian Harbor Ins. Co. v. City of San Diego*, 586 F. App'x 726, 729 (2d Cir.

2014) (summary order) ("Under New York law, delays of one or two months are routinely held

unreasonable."); *Minasian*, 676 F. App'x at 31 ("On numerous occasions, New York courts have

held notice delays of less than three months unreasonable as a matter of law and discharged

insurers of coverage obligations.") (collecting cases).  Deja Realty does not dispute this

recitation of the law.

Instead, Deja Realty argues that its notice to Travelers about a year after it learned of the

damage to its property does not preclude coverage because (1) under N.Y. Ins. Law § 3420,

Travelers must show prejudice from any delayed notice and it has failed to do so, and

(2) Travelers cannot rely on delay to deny coverage because it did not assert untimely notice in

its Denial Notice to Deja Realty.  Opp. at 6-8.  The Court addresses each argument in turn.[3]

---

[3] Deja Realty includes a single sentence in its opposition brief that its year delay was reasonable because "[c]onstruction had paused, negotiations were ongoing, and the insured lacked any realistic avenue to involve the insurer earlier."  Opp. at 6.  These conclusory statements, without citation to any evidence, are insufficient to meet Deja Realty's burden of showing that the delay was reasonable.  *See Am. Ins. Co. v. Fairchild Indus., Inc.*, 56 F.3d 435, 438 (2d Cir. 1995) ("The burden is on the insured to show that a delay was reasonable under the circumstances.").  Simply because construction had paused and negotiations were taking place does not mean that Deja Realty had not suffered damage and loss; indeed, Deja Realty claimed in its suit against Vyse and Kiri that by November 24, 2021, the Premises had already sustained more than $450,000 in

14

As for the lack of prejudice to Travelers, Travelers need not show prejudice to disclaim coverage based on failure to provide timely notice. "Timely notice is a condition precedent to insurance coverage under New York law, and the failure to provide such notice relieves the insurer of its coverage obligation, regardless of prejudice." *Minasian*, 676 F. App'x at 31 (citation omitted); *see also Power Auth.*, 502 N.Y.S.2d at 423 (finding that insurer "need not show prejudice to prevail" in obtaining summary judgment where insurer provided unreasonable untimely notice); *13 State St. LLC v. Acadia Ins. Co.*, 602 F. Supp. 3d 330, 335 (N.D.N.Y. 2022) (same); *Trustworthy LLC v. Vermont Mut. Ins. Group*, No. 16-cv-00367 (NAM) (DJS), 2018 WL 1353094, at *7 n.4 (N.D.N.Y. Mar. 15, 2018) ("Defendant need not show prejudice to deny coverage on the basis of untimely notice."); *Argo Corp. v Greater New York Mut. Ins. Co.*, 827 N.E.2d 762, 764 (N.Y. 2005) (finding that failure to comply with timely notice condition precedent of insurance coverage "vitiates the contract," and "[n]o showing of prejudice is required").

Deja Realty's reliance on N.Y. Ins. Law § 3420, which was amended in 2008 to impose a prejudice requirement for policies issued after January 17, 2009, is misplaced because Section 3420 applies only to liability insurance policies, and not to property insurance policies like the Policy here. The Court agrees with the thorough analysis set forth in *Sunrise One, LLC*, where the court concluded that Section 3420, entitled "Liability insurance; standard provisions; right of injured person," "applies to liability insurance, not property insurance." 293 F. Supp. 3d at 333. As the *Sunrise One* court noted, the Office of the General Counsel to the New York State Insurance Department expressly stated that "*Insurance Law § 3420 is limited to establishing*

---

damages. Jt. SUF ¶ 16. Deja Realty also does not point to any facts that would support its bald assertion that "there was no realistic avenue to involve the insurer earlier," as its eventual notification in September 2022 involved a simple call to Travelers. *Id.* ¶ 7.

*minimum requirements for liability policies.*"  *Id.* (quoting Office of Gen. Counsel Op. No. 09-06-08 (June 23, 2009), http://www.dfs.ny.gov/insurance/ogco2009/rg090608.htm).  Furthermore, even after the 2008 amendment, "New York courts have continued to conclude that no prejudice showing is required when deciding whether to dismiss claims under property insurance contracts as untimely."  *Id.* (citing *Minasian*, 676 F. App'x at 31); *see also Trustworthy LLC*, 2018 WL 1353094, at *7 (granting summary judgment to insurer because insured waited nearly four months to report property damage to hotel and finding insurer need not show prejudice); *13 State St. LLC*, 602 F. Supp. 3d at 335 (granting summary judgment for insurer where insured waited fourteen months to give notice of loss related to water damage at property given that failure to provide timely notice relieves insurer of coverage obligations "regardless of prejudice"); *AMVS, Inc.*, 2025 WL 278438, at *4, *6 (relieving insurer of its coverage obligations, regardless of prejudice, where insured's notice of damage to hotel 82 days after the loss was not given "promptly" or "as soon as possible").

Indeed, each of the cases that Deja Realty's cites in support of its reliance on Section 3420 concerns liability policies and not property insurance.  Opp. at 7-8 (citing *Wausau Underwriters Ins. Co. v. Old Republic Gen. Ins. Co.*, 122 F. Supp. 3d 44 (S.D.N.Y. 2015) (general liability insurance policy); *Bullseye Rest., Inc. v. James River Ins. Co.*, 387 F. Supp. 3d 273 (E.D.N.Y. 2019) (general liability insurance policy); *Harleysville Worcester Ins. Co. v. Wesco Ins. Co.*, 752 F. App'x 90 (2d Cir. 2019) (summary order) (general liability insurance policy)).

Therefore, the Court finds that Deja Realty's notice to Travelers a year after becoming aware of the loss is unreasonable as a matter of law, and Deja Realty has failed to satisfy a

16

condition precedent to coverage under the Policy, which requires "prompt notice of the loss or damage" and a description of the loss "as soon as possible." Jt. SOF ¶ 5; Policy at Trav 101-02.

This brings the Court to Deja Realty's second argument: that Travelers waived its right to disclaim coverage for untimely notice. Deja Realty argues that, because Travelers did not deny coverage based on untimely notice in the Denial Notice and instead relied on the earth movement exclusion, it cannot now rely on delay as a basis to deny coverage. Opp. at 8. Travelers responds that its Denial Notice did not refer only to the earth movement exclusion but also "clearly disclaimed coverage to Plaintiff on multiple grounds, citing to 1) the earth movement exclusion under Exclusion B.1.b; 2) wear and tear, settling, cracking, etc. under Exclusion 2.d; [and] 3) . . . for late notice, under Section E. Property Loss Conditions." Reply at 5. The Court agrees with Deja Realty that the Denial Notice did not disclaim coverage based on untimely notice.

Travelers's assertion that it "clearly disclaimed coverage" based on late notice misconstrues the Denial Notice. The Denial Notice stated that:

> You presented a claim for cracks to your property. We inspected the damages with you on 09/22/2022. Our research found that the damage is a result of earth movement. Since earth movement is not a covered cause of loss, your policy does not provide coverage.

Denial Notice at 2. The Notice then stated: "As a reference, I have provided the following section of your policy (Masterpac MP T1 02 02 05), which explains that this type of loss is excluded[.]" *Id.* Following this sentence are three excerpts from the Policy, the first two of which are part of the EXCLUSIONS section of the Policy, and the last of which, separated by three asterisks, is from a separate section of the Policy entitled "PROPERTY LOSS CONDITIONS." *Id.* at 2-4. The first excerpt is the Policy language describing the earth movement exclusion, which related to the earlier statement in the Denial Notice saying: "Since

17

earth movement is not a covered cause of loss, your policy does not provide coverage." *Id.* at 2-3.  The earth movement exclusion Policy language is immediately followed by another section of the "EXCLUSIONS" section of the Policy, stating that Travelers "will not pay for loss or damage caused by or resulting from" many different sources, including "[a]rtificially generated electrical current," "[s]moke, vapor or gas from agricultural smudging or industrial operations," "[r]ust," "[s]mog," "[n]esting or infestation, or discharge or release of waste products or secretions, by insects, birds, rodents or other animals[,]" as well as "[w]ear and tear." *Id.* at 3.  Travelers's assertion that the inclusion of this Policy language was sufficient to "clearly disclaim" coverage based on "wear and tear" is undermined by the fact that numerous other conditions — smog, rust, nesting animals, smoke, etc. — are also listed, and Travelers is not asserting that it disclaimed coverage on any of these other bases.  On the other hand, the "wear and tear" Policy provision is under the "EXCLUSIONS" portion of the policy, and the Denial Notice does state that it is providing "the following section of your [P]olicy, . . . which explains that this type of loss is excluded." *Id.* at 2.  However, the Court need not decide whether Travelers disclaimed coverage based on "wear and tear" because, as relevant for the present argument, it did *not* expressly disclaim coverage, which concerns untimely notice.

There are several indications in the Denial Notice that Travelers was not expressly disclaiming coverage based on untimely notice.  As discussed, the Denial Notice stated that it was disclaiming coverage based on the earth exclusion and then included the policy language regarding the earth exclusion and another exclusion section that included "wear and tear." *Id.* at 2-3.  Unlike the earth movement and wear and tear sections, the "PROPERTY LOSS CONDITIONS" section of the Policy that is later included in the Denial Notice is not an exclusion; rather it is a condition precedent to coverage.  *See Trustworthy LLC*, 2018 WL

18

1353094, at *6 (holding that requiring that notice of a claim be given "promptly" or "as soon as possible" is a "condition precedent" to an insurance policy and failure to comply with this condition "vitiates the contract" (citations omitted)); *Am. Ins. Co.*, 56 F.3d at 438 ("[C]ompliance with the notice provisions of an insurance contract is a condition precedent to an insurer's liability."). The Denial Notice also includes asterisks separating the Policy language excerpts regarding EXCLUSIONS from the excerpts of the PROPERTY LOSS CONDITIONS. *See* Denial Notice at 3. Finally, there is no indication from the Denial Notice that Travelers is relying on the provision from the PROPERTY LOSS CONDITIONS that requires "prompt notice" or a description "as soon as possible" — and claiming that notice was untimely — as opposed to highlighting another provision in that same section that advises the policy holder to "[t]ake all reasonable steps to protect the Covered Property from further damage, and keep a record of your expenses necessary to protect the Covered Property, for consideration in the settlement of the claim." *Id.* at 4. Therefore, contrary to Travelers's assertions, the Denial Notice did not disclaim coverage based on untimely notice.

The Court must therefore determine whether, as Deja Realty asserts, Travelers waived its right to rely on the lack of timely notice because it was not raised as a ground for denial of coverage in the Denial Notice. Opp. at 8; *Cedar & Washington Assocs., LLC v. U.S. Fire Ins. Co.*, No. 06-cv-02515 (RMB), 2006 WL 8460237, at *4-5 (S.D.N.Y. Sept. 26, 2006) (observing that waiver law applies beyond liability insurance, "and it is well-settled that policy conditions can be waived"). In the insurance context, a waiver is defined under New York law as "a voluntary and intentional relinquishment of a known right." *Albert J. Schiff Assoc., Inc. v. Flack*, 417 N.E.2d 84, 87 (N.Y. 1980). "[C]ourts find waiver where there is direct or circumstantial proof that the insurer intended to abandon the defense." *Id.* The Second Circuit has held that,

under New York law, waiver of late notice is "conclusively established" where the insurer asserted several grounds for disclaiming coverage but did not include the late notice ground. *New York v. AMRO Realty Corp.*, 936 F.2d 1420, 1431, 1433 (2d Cir. 1991) (finding that insurer's failure to include untimely notice in the disclaimer of coverage notice waived any late-notice defense as a matter of law, despite the submission of an affidavit from the insurer's claim examiner stating that the insurer did not intend to waive the late notice defense). Given that Travelers did not disclaim coverage based on untimely notice in the Denial Notice, Deja Realty argues that Travelers has waived this defense. Opp. at 8.

Travelers responds that, even if it did not disclaim coverage based on untimely notice in the Denial Notice, its "express reservation of rights" in the Denial Notice precludes a finding that it waived its right to require prompt notice as required under the policy and to deny coverage on that basis. Reply at 6 n.1. The Denial Notice contains the following language toward the end: "Your policy may have other terms, conditions and exclusions that apply to this claim. We do not waive any rights, including our right to deny coverage, for any valid reason under the policy or at law." Denial Notice at 4.

*AMRO* left open the question of whether the broad reservation-of-rights language in the Denial Notice can save a late notice defense. Indeed, the court there stated that "we do not address here the case where the insurer's disclaimer of coverage based on specified grounds is accompanied by an express and unequivocal statement that other grounds for disclaimer are reserved and not waived." *AMRO*, 936 F.2d at 1433. In *Mave Hotel Investors LLC v. Certain Underwriters at Lloyd's London*, No. 21-cv-08743 (JSR), 2023 WL 2871345 (S.D.N.Y. Apr. 10, 2023), the court examined this question in the context of a claim under a property insurance policy where at least some of the damages were known by September 2020, but the insurer was

20

not notified until over three months later. *Id*. at \*3. Noting that "New York courts routinely hold that periods shorter than this 3-month delay suffice to create grounds to deny coverage where the policy has a similar 'prompt notice' requirement," the court found that notice was not provided promptly, but that late notice was not raised by the insurer when it denied coverage. *Id.* The insurer instead disclaimed coverage based on the policy's "wear and tear" exclusion, in a letter that also contained broad "reservation of rights" language that stated: "The actions of [the insurer] . . . should not be construed as a waiver of any rights . . . [.] To the contrary, [the insurer] reserves each and every right they have under the policy and at law." *Id.* at \*3 & n.3. The *Mave* court noted that cases post-*AMRO* "are mixed" on the question of whether a "generic" reservation of rights that "does not specifically call out any defense" would prevent waiver. *Id.* at \*4.

For example, in *New York Marine & General Ins. Co. v. Travelers Property Casualty Co.*, 485 F. Supp. 3d 398 (S.D.N.Y. 2020), the insurer's denial letter disclaimed coverage on grounds other than untimely notice but included a statement reserving the insurer's "rights to assert new and additional bases under the policy or otherwise for its coverage position," "the right to modify or supplement this position," and "[a]ll rights which [the insurer] may have under the terms of [the] policy and at law." *Id.* at 408 (alterations in original) (citation omitted); *see also id.* at 409-10. The court recognized waiver is generally found where "an insurance company disclaims coverage for failure to satisfy one condition precedent but neglects to assert other such conditions," *id*. at 408 (quoting *Burt Rigid Box, Inc. v. Travelers Prop. Cas. Corp.*, 302 F.3d 83, 95 (2d Cir. 2002)), but found that the broad reservation of rights contained in the denial notice "preserved disclaimer on the basis of insufficient and/or untimely notice," *id*. at 410. *See also Heiser v. Union Cent. Life Ins. Co*., No. 94-cv-00179 (FJS), 1995 WL 355612, at

21

*5 & n.10 (N.D.N.Y. June 12, 1995) (holding that denial letter containing "a reservation of defenses not raised" showed that insurer did not intend to abandon ground not raised in the letter "as a ground for denial" of the claim).

In *Hunt Construction Group, Inc. v Berkeley Assurance Co.*, 503 F. Supp. 3d 106 (S.D.N.Y. 2020), in contrast, the court held that the "boilerplate 'reservation of rights' language" did not save the insured from waiving a late-notice defense that was not raised when coverage was initially denied. *Id.* at 115. The *Hunt* court acknowledged that "some courts have found a reservation of rights to preclude a waiver defense," but that "they usually do so in instances in which the reservation of rights expressly raises the specter of a late-notice defense." *Id.*; *see also Mave*, 2023 WL 2871345, at *4-5 (agreeing with *Hunt* and finding that "generic reservation of rights language in [insurer]'s letter denying coverage does not suffice to avoid waiver of its late notice defense under *AMRO*").

The Court need not dive too deeply into the "mix" of cases in this arena, because the particular language in the Denial Notice here "raises the specter of a late-notice defense." *Hunt*, 503 F. Supp. 3d at 115. While the Denial Notice did not expressly disclaim coverage based on late notice, it explicitly included, as one of three Policy provisions excerpted in the Denial Notice, the provision that requires "prompt notice of the loss or damage" and a description "as soon as possible," followed by Travelers's broad and unequivocal reservation of rights to deny coverage for any valid reason under policy or at law. Denial Notice at 3. This contrasts the denial letters in *Hunt* and *Mave*, where the insurers made no mention of the prompt notice requirement. *See* Denial Letter, *Hunt*, 503 F. Supp. 3d 106, Dkt. 31-6 (lacking mention of policy provision requiring prompt notice); Denial Letter, *Mave*, 2023 WL 2871345, Dkt. 100-5 (same). Given that the language of the Denial Notice includes a broad unequivocal reservation of rights,

22

along with an express reference to the requirement that Deja Realty provide prompt notice, Travelers cannot be said to have voluntarily and intentionally waived its right to disclaim coverage for untimely notice.  *See Const. Reinsurance Corp. v. Stonewall Ins. Co.*, 980 F. Supp. 124, 131-32 (S.D.N.Y. 1997) (finding insurer did not waive right to rely on late notice defense where disclaimer letter stated that "we do not waive any rights or defense available to us" and this "unequivocal reservations of rights" followed a reference in an earlier letter noting the lack of prompt notice), *aff'd*, 182 F.3d 899 (2d Cir. 1999).[4]

The only case Deja Realty cites in support of its waiver argument is *General Accident Ins. Group v. Cirucci*, 403 N.Y.S.2d 773 (N.Y. App. Div. 1978), *aff'd*, 387 N.E.2d 223 (N.Y. 1979).  Opp. at 8.  *Cirucci*, as affirmed by the Court of Appeals, held that where unreasonable delay in giving notice to the insurance carrier "was not raised in the letter of disclaimer, it may not be asserted now."  *Cirucci*, 387 N.E.2d at 225.  However, *Cirucci* did not address the impact of any reservation of rights language, or indicate that such language was present in the denial letter, unlike in the case at hand.  *See Heiser*, 1995 WL 355612, at \*5 n.10 (distinguishing *Cirucci* in part because "the summary disposition of *Cirucci* gives no indication that other relevant factors were present, such as a paragraph in the rejection letter reserving defenses").

The reservation of rights language here is also different from the language in *AMRO* that was found insufficient to preclude waiver.  In *AMRO*, the court found that the reservation of rights language that preserved the insurer's "right[] to rely on additional reasons for disclaimer should they become apparent in the future" did not preclude waiver because the late notice defense was evident at the time the insurer issued the disclaimer letter.  *AMRO*, 936 F.2d at 1433

---

[4] Indeed, Travelers continued to assert that it was not obligated to provide coverage due to delayed notice in its Fifth Affirmative Defense set forth in its Answer.  Dkt. 25 ¶ 18.

n.13.  The reservation language in the present case is much broader and is not limited to reasons that "become apparent in the future."

For all of these reasons, Deja Realty's unexcused and unreasonable delay of a year before notifying Travelers of its loss or damage excuses Travelers's obligation under the Policy to provide coverage.  *See New York Marine*, 485 F. Supp. 3d at 410 (holding that "unexcused delay and deficiency [in providing sufficient or timely notice] excuses Travelers's obligation under the Travelers Policy"); *Same Day Delivery Serv., Inc. v. Penn Star Ins. Co.*, 151 F. Supp. 3d 380, 385 (S.D.N.Y. 2015) ("New York courts have, on numerous occasions, ruled that an insured's inexcusable delay in providing notice of a claim excuses the insurer's obligation to provide coverage.").

Given this conclusion, the Court need not reach Travelers's alternative arguments in support of its summary judgment motion, or its motion to strike Deja Realty's expert report.

## CONCLUSION

For the foregoing reasons, Travelers's motion for summary judgment at Dkt. 62 is GRANTED; Deja Realty is not entitled to a declaration of coverage under the Policy. Furthermore, Travelers's motion to strike at Dkt. 50 is DENIED AS MOOT.  The Clerk of Court is respectfully directed to close this case.

Dated: March 11, 2026
        New York, New York

SO ORDERED.

_____
JENNIFER L. ROCHON
United States District Judge